UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION



FILED

AUG - 1 2016

CLERK

| In Re:<br><br>Miscellaneous Subpoenas | 3:16-mc-00003-MAM<br><br>ORDER GRANTING MOTION TO QUASH ON BEHALF OF NON-PARTIES WESTERN SKY FINANCIAL, LLC, AND MARTIN A. WEBB |
|---|---|

A non-party tribal company and its registered agent (a tribal member) moved to quash document and deposition subpoenas issued to them that a private overnight courier dropped off at the doorstep of a building located on a South Dakota Indian Reservation. Because the subpoenas were not properly served under Federal Rule 45(b) and the case law of this Circuit and District, the motion is granted and the subpoenas are quashed.

## BACKGROUND

Non-Parties, Western Sky Financial, LLC ("Western Sky") and Martin A. Webb ("Webb"), the latter as the registered agent for Western Sky and as an individual, have moved to quash three separate subpoenas simultaneously issued to Western Sky and Webb in a case venued in the Eastern District of Virginia, *Hayes, et al. v. Delbert Services Corporation*, Case No. 3:14-cv-258. The subpoenas command Webb, as Western Sky's agent and individually, to testify at a deposition and to produce documents and other

information. Western Sky and Webb assert that the subpoenas were improperly served and that compliance with them would subject Western Sky and Webb to undue burden and extraordinary expense.

## DISCUSSION

### A. Service

None of the subpoenas were delivered by personal service. Rather, they were sent by Federal Express in document-size envelopes labeled "Priority Overnight." Webb's personal bookkeeper found the envelopes on the front steps to a building situated within the Cheyenne River Sioux Tribe (CRST) Reservation, approximately 40 miles from Webb's home. The envelopes did not require a signature and, when discovered, were partially opened and the contents were wet. To date, no one has attempted to personally serve Webb either individually or on behalf of Western Sky.

Western Sky and Webb maintain service was invalid under both federal and tribal law. They contend that Plaintiffs, the issuing party, made no effort to ensure that the subpoenas were placed in Webb's possession or control. And Western Sky and Webb say that personal, in hand, service was required and that drop off delivery, by a Federal Express courier, was legally insufficient.

### 1. The Federal Rule

Rule 45 of the Federal Rules of Civil Procedure addresses the service "requirement" and provides that "serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees

2

for 1 day's attendance and the mileage allowed by law."[1] The Rule, however, does not define what "delivery" means.

The "long-standing interpretation" of Rule 45 has been personal service of subpoenas is required.[2] Under this interpretation, the word "delivering" in subdivision (b)(1) of the Rule has been construed literally.[3] The Eighth Circuit has held a subpoena sent by facsimile (fax) and by regular mail did not comply with the "delivery" requirements of Rule 45(b)(1).[4] Although not altogether clear, the appeals court appears to have followed the majority rule which requires personal service for a non-party subpoena.[5] But the Court hinted that it might accept some method of service, other than personal delivery, if the method was one that ensured the subpoena was placed in the actual possession or control of the person served.[6]

---

[1] Fed. R. Civ. P. 45(b)(1) (2013)

[2] *See* 9A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure*, §2254, n. 4 (3d ed. 2008 & 2016 Supp.).

[3] *See id.* at n.5.

[4] *See Firefighters Institute for Racial Quality, ex rel Anderson v. City of St. Louis*, 220 F.3d 898, 903 (8th Cir. 2000), *cert. denied*, 532 U.S. 921 (2001).

[5] *See Atmosphere Hospital Management, LLC v. Curtullo*, No. 5:13-CV-05040-KES, 2015 WL 136120 at *10 (D.S.D. Jan. 9, 2015); *Precourt v. Fairbank Reconstruction Corp.*, Civ. No. 10-mc-130-KES, 2011 WL 310740 at *3 (D.S.D. Jan. 28, 2011).

[6] *See Firefighters Institute*, 220 F.3d at 903; *Atmosphere Hospital Management*, 2015 WL 136120 at *11.

In recent years, a growing number of courts have departed from the view that personal service is required and held that personal service is not required.[7] This emerging minority position has been embraced by a number of courts and used to uphold the service of a subpoena via Federal Express delivery.[8] Nevertheless, Rule 45 has been amended several times since 2000 (in 2005, 2006, 2007 and 2013) when most of these "minority" decisions were handed down, but notably, the revisors did not expand the methods of service.[9]

Given the law of this Circuit and District, the Court is constrained to grant Western Sky and Webb's motion to quash because the subpoenas were not personally served and because the method of service used was not one that would ensure that the subpoenas would be placed in their actual possession or control.[10] The Court though

---

[7]See 9A *Federal Practice and Procedure*, §2454, n.10.

[8]See e.g. *Bland v. Fairfax County, Va.*, 275 F.R.D. 466, 469-72 (E.D. Va. 2011); *Hall v. Sullivan*, 229 F.R.D. 501, 505-06 (D. Md. 2005); *Western Resources v. Union Pacific R.R.*, No. 00-2043-CM, 2002 WL 1822432 at *1, n.2 (D. Kan. July 23, 2002).

[9]See David D. Siegel, *Practice Commentaries,* Fed. R. Civ. P. 45, cmt. C45-9 (West Supp. 2010) ("An effort by the revisors to expand the methods of service, at least in designated circumstances, would have been welcome. It was not to be, however, and personal delivery remains the sole method prescribed [under Rule 45(b)].").

[10]See *Firefighters Institute*, 220 F.3d at 903; *Precourt*, 2011 WL 310740 at *3; *see also Atmosphere Hospitality Management*, 2015 WL 136120 at *11 (the subpoenas were never personally served and the method of service did not provide assurance that the party being served would actually receive them).

believes that the wisdom of the majority (personal service) view should be reexamined in light of the actual language of the Rule itself, Rules 1 and 4 and simple logic.

Often overlooked, Rule 1 requires that the Rules of Civil Procedure be "construed and administered to secure the just, speedy and inexpensive determination of every action."[11]  Mandating that delivery of a subpoena by personal service, even when the party served has not denied receiving the subpoena and has had an opportunity to protect its interests, "would only serve to torture the rules and drive up the expense of litigation" – a result that would contravene the Rule's directives.[12]

More importantly, nothing in the language of Rule 45 indicates that personal service is required to effectuate "delivery" or that service by some other means – such as certified mail or Federal Express delivery – is prohibited.[13]  Instead, the Rule requires only that a subpoena be delivered to the person served by a qualified individual (i.e., someone that is at least 18 years of age and not a party to the case).  Delivery is merely "the act by which the *res* or substance thereof is placed within the actual possession or control of another."[14]

---

[11]Fed. R. Civ. P. 1 (2015).

[12]*See Doe v. Herseman*, 155 F.R.D. 630, 631 (N.D. Ind. 1994).

[13]*See Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir. 2012); *Bland*, 275 F.R.D. at 469-70.

[14]*See Herseman*, 155 F.R.D. at 631.

Beyond this, Rule 4 provides additional support for the conclusion that Rule 45 does not command that there be personal, in hand, service of a subpoena. The former states in relevant part, that an individual . . . may be served in a judicial district of the United States by delivering a copy of the summons and complaint to the individual *personally*. . . ."[15] As the Rule makes clear, when the drafters of the Federal Rules wanted to require "personal service" of a pleading, they were able to do so unambiguously.[16] By contrast, in Rule 45, the drafters merely provided that the subpoena be "deliver[ed] . . . to the named person."[17] Reading the word "personally" into Rule 45 would render that same word – used in Rule 4(e)(2)(A) – "surplusage," a practice inconsistent with well-accepted rules of statutory interpretation.[18] The drafters thus knew how to express a personal service requirement in a rule of civil procedure and chose not to do so when they wrote, and thereafter amended, Rule 45.

Lastly, there is no policy reason, the Court can find or think of, that would justify other forms of service for a summons and complaint but not for a subpoena. It makes no sense to allow a person to be sued, and put at risk for personal liability, on less than

---

[15]Fed. R. Civ. P. 4(e) (2015).

[16]*See Hersemann*, 155 F.R.D. at 631.

[17]Fed. R. Civ. P. 45(b)(1).

[18]*See Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990); *see also Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249 (1985); *see generally*, 2A Sutherland Statutory Construction, §46.6 (7th ed. 2015)

personal service and yet require such service for a discovery or trial subpoena. The objective should be to assure appropriate notice to the person subpoenaed and afford that person an opportunity to challenge the subpoena without saddling the discovering party with a burdensome and expensive service requirement.

Significantly, permitting service of a subpoena by some lesser but effective means in no way prejudices the non-party being served. As long as that party receives the subpoena, it should be able to avail itself of the procedural protections of Rule 45(d) in the same manner as it would if personally served.

Despite the conclusory holding of a majority of courts and the lack of appreciation that the real purpose of Rule 45(b) is to provide effective notice to the subpoenaed party, rather than to demand adherence to one particular type of service, established precedent requires that the Court, in this case, quash the subpoenas Webb ultimately received via Federal Express delivery from his bookkeeper.[19] The Court does this with some reluctance but with the hope that the personal service rule will, in the near future, be audited and modified to comport with the plain language of Rule 45.[20]

---

[19]See *Firefighters Institute*, 220 F.3d at 903; *Precourt*, 2011 WL 310740 at *3.

[20]See *Bland*, 275 F.R.D. at 469-72; *In re Falcon Air Exp., Inc.*, No. 06-11877-BKC-AJC, 2008 WL 2038799 at **1-4 (Bankr0. S.D. Fla. May 8, 2008); *Hall*, 229 F.R.D. at 503-06; see generally Orlee Goldfeld, *Rule 45(b): Ambiguity in Federal Subpoena Service*, 20 Cardozo L. Rev. 1065 (1999).

## 2. The Tribal Rule

The underlying case is a federal court proceeding, not a tribal one. So the Federal Rules of Civil Procedure, and in particular, Rule 45, govern – not CRST's civil rules.[21]

And immunity from process does not apply to individual tribal members[22] or business entities[23] like Webb and Western Sky. For there to be immunity, a member or entity must function as an arm of the tribal government and in a governmental role, not simply as the agent of a commercial entity that happens to be located within the exterior

---

[21] *See Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 206 F.R.D. 78, 84 n. 5 (S.D.N.Y. 2002).

[22] *See Puyallup Tribe, Inc., v. Department of Game*, 433 U.S. 165, 173 (1977) (*Puyallup II*); *Catskill*, 206 F.R.D. at 86; *Romanella v. Hayward*, 933 F.Supp. 163, 167-68 (D. Conn. 1996), *aff'd*, 114 F.3d 15 (2d Cir. 1997); *see also Puyallup Tribe, Inc. v. Department of Game*, 391 U.S. 392, 396-97 n.11 (1968) (*Puyallup I*) (holding that the individual members of the Tribe were subject to Washington courts); *Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155, 1162 (10th Cir. 2014) (noting in *dicta* that "we see no reason why an Indian tribe should be able to 'shut off an appropriate judicial demand for discovery' served on a tribal official, rather than against the Tribe itself") (internal citation and footnote omitted)); *Grand Canyon Skywalk Development L.L.C. v. Cieslak*, Nos. 2:15-cv-00663-JAO0GWF, 2:13-cv-00596-JAD-GWF, 2015 WL 3551305 at *9 (D. Nev. June 5, 2015) (a "federal civil subpoena served on an individual tribal officer or employee, as opposed to the tribe itself, does not trigger sovereign immunity"), *order adopted*, 2016 WL 890921 at *3 (D. Nev. March 7, 2016).

[23] *See E.E.O.C. v. Karuk Tribe Housing Authority*, 260 F.3d 1071, 1080-82 (9th Cir. 2001); *see also Florida Paraplegic Ass'n, Inc. v. Miccosukee Tribe of Indians*, 166 F.3d 1126, 1129 (11th Cir. 1999) (stating that businesses run by a tribe that are within interstate commerce do not qualify as a matter within the tribe's self-governance); *but see Alltel Communications, L.L.C. v. DeJordy*, 675 F.3d 1100, 1103-06 (8th Cir. 2012) (quashing federal subpoena served on tribe in civil litigation in which tribe was not a party on sovereign immunity grounds).

boundaries of an Indian reservation and run by a tribe or its members.[24] No showing has been made that Western Sky and Webb are, or were, part of CRST's government or infrastructure – as opposed to being engaged in the operation of a commercial venture.

At any rate, because the Court is granting the motion to quash under the federal rule, it need not decide the merits of Western Sky and Webb's sufficiency of service claim under tribal law and CRST's subpoena rule.

## B. Undue Burden and Expense

Although technically moot in light of the ruling on the service issue, because of the likelihood that Western Sky and Webb may again be served with the same or very similar subpoenas, the Court makes these observations as to whether the subpoenas impose an undue burden or expense, consistent with its duties under Rule 45(d)(1).[25]

Western Sky and Webb assert that compliance with the subpoenas, as written, would create an undue burden and expense on Webb to gather an extraordinary amount of documents and appear for two separate depositions. The Court agrees.

### 1. Document Subpoena

At the outset, Plaintiffs does not endeavor to narrow or tailor the scope of the documents requested. The 37 document requests are broadly worded and essentially

---

[24]*See Karuk*, 260 F.3d at 1080-81.

[25]*See Precourt v. Fairbank Reconstruction Corp.*, 280 F.R.D. 462, 467 (D.S.D. 2011).

9

seek all documents whatsoever relating to Western Sky and its business relationship with CashCall and WS Funding entities.[26]

In one of its filings, Western Sky states that at one time, it had over 100 employees, funded thousands of loans and conducted all of its business with CashCall and WS Funding. Western Sky further states, in the same filing, that it ceased all business operations in or around September 2013, and presently has no employees, offices, or operations of any kind. If true, then gathering all emails, correspondence or other communication between any of Western Sky's officers, employees or representatives and CashCall would be a huge undertaking that Webb, as an individual, would be hard pressed to be able to comply with and afford. And notably, the subpoena seeks the production of documents going back to January 1, 2005, about four years before Western Sky says it ever began doing business.[27]

It also appears that much of the information sought in the document subpoenas could be obtained directly from the parties in the case. Western Sky and Webb maintain that over half of the requests directly reference documents related to

---

[26]*See e.g.* Req. No. 20 ("All emails, correspondence or other communications between any officer, employee or representative of Western Sky and CashCall"); *see also* Req. No. 7 ("All documents that relate to, discuss or describe the operational and/or financial relationship between Western Sky and CashCall"); Req. No. 8 ("All documents that relate to, discuss or describe the operational and/or financial relationship between CashCall and WS Funding"); Req. No. 32 ("All documents relating to the underwriting and funding of Western Sky loans").

[27]*See* Req. Nos. 24, 37.

Defendants, Delbert Services Corporation or its companies (e.g., CashCall, Delbert, WS Funding and J. Paul Reddam).[28]  This could be another ground for quashing the subpoena, if Western Sky and Webb are indeed correct.

Finally, a number of the subpoenaed documents look to be unrelated to Western Sky or Webb in any way and call for information they do not have in their possession, custody or control.[29]  This too is troubling and something that should be corrected before another subpoena is issued and sent out.

## 2. Deposition Subpoenas

Webb's subpoena, as the registered agent for Western Sky, suffers from many of the same infirmities as the documents subpoena just discussed.  When a subpoena is directed to a non-party organization, as here, Rule 30 requires that the noticing party "must describe with reasonable particularity the matters for examination."[30]  In the Notice of Deposition, the topics on which an examination is requested are far-reaching and pervasive and include "[a]ny and all information related to or referenced in" the documents subpoena.[31]  These topics would put the corporation and Webb in the

---

[28]*See* Req. Nos. 1-3, 6-9, 11-22, 24, 33-34.

[29]*See* Req. No. 33 ("All documents concerning or related to the dissolution or winding of Delbert."); Req. No. 11 ("All documents concerning, referencing or related to the creation and/or formation of CashCall."); Req. No. 12 ("All documents concerning, referencing or related to the creation and/or formation of WS Funding.").

[30]Fed. R. Civ. P. 30(b)(6) (2015).

[31]Notice of Dep. ¶1.

position of having to prepare for an open ended and virtually unlimited examination. The civil rules do not countenance this.

As for Webb's individual deposition, the Court wonders whether there is a need to depose him at this time. Have responsive pleadings, to the Second Amended Complaint been filed yet and is the case at issue? If not, then his deposition may very well be premature.

## CONCLUSION

The document and deposition subpoenas were improperly served under binding Circuit and District court precedent. For this reason, Western Sky and Webb's motion to quash the subpoenas should be granted.

Although not necessary to the disposition of the motion, the subpoenas, in their current form, appear to be deficient in many respects and impose an undue burden and expense on Western Sky and Webb. In the event Western Sky and Webb are served again with subpoenas, these deficiencies will need to be corrected so that they are in compliance with the dictates of Federal Rules 30 and 45 of the civil rules.

## ORDER

Accordingly, it is hereby

ORDERED that Western Sky and Webb's motion to quash document and deposition subpoenas, based on invalid service of the subpoenas, under federal law, is granted.

Dated this 1st day of August, 2016, at Pierre, South Dakota.

BY THE COURT:

_____
MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE